652 So.2d 1266 (1995)
Frederick W. NYSTROM, III, and Elaine Nystrom, Appellants,
v.
Diane CABADA, Appellee.
No. 94-00237.
District Court of Appeal of Florida, Second District.
April 12, 1995.
*1267 Mark A. Slack of Paulich, O'Hara & Slack, P.A., Naples, for appellants.
Karen S. Beavin of Sparkman & Quinn, Naples, for appellee.
PATTERSON, Judge.
Frederick and Elaine Nystrom appeal from an adverse judgment in an action Diane Cabada filed arising from structural defects to a residence. We affirm in part and reverse in part.
In 1989, Cabada purchased a single family residence from the Nystroms for $126,000. Mr. Nystrom had constructed the residence, acting as his own contractor, and the Nystroms had occupied the residence for one year prior to the sale. Mr. Nystrom is not a licensed general contractor. Upon moving into the house, Cabada began to experience problems with walls cracking and windows and doors sticking. She retained a consulting engineering firm which, after inspection, returned a report that the structure, by design and as built, contained numerous structural defects. She complained to the building authorities of Collier County, who in turn had a second inspection and report done by another independent engineering firm. That report confirmed the previously-discovered structural defects, plus additional defects, and concluded the structure was a "hazardous building" in regard to high-wind resistance.
In July 1992, Cabada filed a six-count complaint against the Nystroms based on breach of implied warranty, fraud, rescission of contract, breach of contract, negligence, and intentional violation of the Collier County Building Code. In a lengthy nonjury trial, experts testified for each side. All agreed that defects were present, but disagreed as to the severity of the problem and what could be done to remedy it. One expert for Cabada testified that the house should be torn down and rebuilt and then opined, without any apparent qualifications, that the cost to do so would be $152,000. The principal expert for the Nystroms testified the structure could be repaired for $23,000 and he would do the work for that price. No testimony was offered as to diminution of value.
*1268 At the conclusion of the trial, the judge announced:
I'm going to find damages in the amount of $126,000, rule that the plaintiff is entitled to elect either a judgment for damages in that amount, further entitled to costs and attorney's fees under the contract, or the plaintiff may elect to rescind and cancel and reconvey title to the Nystroms in exchange for $126,000... .
To no one's surprise, Cabada elected to keep the property, which continued to be her family residence, and to take judgment in the amount of $126,000.
Mr. Nystrom, although not a licensed contractor, had extensive experience in the construction field and, in fact, performed all of the carpentry in this house. Since the serious structural defects which the experts found to exist all arose from the carpentry, the record supports the finding that Mr. Nystrom knew or should have known of these defects and had a duty to disclose them to Cabada under Johnson v. Davis, 480 So.2d 625 (Fla. 1985). We, therefore, affirm the trial court's determination of liability on the part of the Nystroms.
It is on the issue of damages that we are compelled to reverse. The trial court found "for Plaintiff on all Counts" of the complaint, which included breach of warranty and contract, fraud, and rescission. The relief for each of these theories of liability differs. In rescission, Cabada could return the property to the Nystroms in return for a refund of the purchase price, but could not elect that remedy and recover damages also. Niesz v. Gehris, 418 So.2d 445 (Fla. 5th DCA 1982), review denied, 427 So.2d 736 (Fla. 1983). In fraud, damages are determined by the "benefit of the bargain" rule which awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true, or the "out-of-pocket" rule, which awards as damages the difference between the purchase price and the real or actual value of the property. Martin v. Brown, 566 So.2d 890 (Fla. 4th DCA 1990). As for breach of contract or warranty arising from construction defects, the measure of damages is that set forth in Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982). In Hourihan, our supreme court adopted section 346(1)(a) of the Restatement (First) on Contracts (1932), which in pertinent part provides:
(a) For defective or unfinished construction [the contracting party] can get judgment [from the builder] for either
(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.
Cabada was offered the option of rescission, but opted for the more attractive remedy of keeping the residence together with what amounts to a full refund of the purchase price.[1] Such a remedy is not supported by any authority which has come to our attention, applying either the measure of damages available in fraud or breach of contract. This record is devoid of any evidence upon which the trial court could have arrived at the amount of $126,000. We, therefore, reverse the final judgment on the issue of damages. We remand for new trial on the issue of damages consistent with this opinion. See Smith v. Mark Coleman Constr., Inc., 594 So.2d 812 (Fla. 2d DCA 1992).
Affirmed in part, reversed in part, and remanded.
DANAHY, A.C.J., and FULMER, J., concur.
NOTES
[1] An appraisal in evidence, made one month before closing, reflects a land value of $32,000 and a value of the structure itself in the amount of $89,212.