*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIRINA KODRA,

Plaintiff/Counterdefendant-Appellee,

v

AMERICAN SELECT INSURANCE COMPANY,

Defendant/Counterplaintiff-Appellant,

and

KATHERINE ALLCOCK and PATRICK ROBERT LELLOS,

Defendants.

UNPUBLISHED
June 23, 2022

No. 356166
Wayne Circuit Court
LC No. 18-012237-NI

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM.

Defendant, American Select Insurance Company, appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10) of plaintiff Dirina Kodra's claim for first-party personal protection insurance (PIP) benefits. We reverse and remand.

## I. FACTS

This case arises out of a policy of no-fault automobile insurance issued by defendant to plaintiff. In her application for the policy, plaintiff indicated that she was the sole applicant and identified her vehicle as a 2004 Ford Escape. She checked a space in the application that stated "none of the Auto Eligibility Questions are applicable," and declined to check the space under that section that indicated "an insured vehicle is not solely owned by and registered to the applicant (other than encumbrances, trusts or leases)." Plaintiff also did not check the space that indicated "Applicant and Co-Applicant relationship is 'Other' and both parties are listed jointly on the title of at least one vehicle listed on the policy." Plaintiff's application also stated:

APPLICANT'S STATEMENT: I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief. This information is being offered to the company as an inducement to issue the policy for which I am applying.

The application further stated that "[i]n making this application for insurance, it is understood that as a part of our underwriting procedure, an investigative consumer report containing driving record information may be obtained for each driver in the household." Plaintiff does not dispute that she signed the application.

The parties do not dispute that at the time plaintiff applied for the insurance policy, the Ford Escape actually was co-owned by plaintiff and her then-fiancé, Dannelly Smith, with whom she resided. Smith's driver's license had been suspended indefinitely since July 2016 for repeated traffic violations. The parties also do not dispute that in the application for the no-fault policy plaintiff did not disclose Smith as a co-owner of the Ford Escape.

Defendant thereafter issued the policy to plaintiff, which provided in relevant part:

H. Fraud.

1. Under Sections IV, V and VI:

a. This insurance was issued in reliance on the information provided in your insurance application.

b. We may void coverage under this policy if you or an insured have knowingly concealed or misrepresented any material fact or circumstances, or engaged in fraudulent conduct, at the time application was made for insurance or at any time during the policy period.

c. We may void this policy or deny coverage for an accident or loss if you or an insured have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

d. We may void this policy for fraud or material misrepresentation even after the occurrence of an accident or loss. This means that we will not be liable for any claims or damages which would otherwise be covered.

\* \* \*

f. No person who engages in fraudulent conduct shall be entitled to receive payment under this policy.

g. If we void this policy, it shall be void from its inception as if this policy never took place.

Shortly after obtaining the policy from defendant, plaintiff removed the Ford Escape from the insurance policy and added a 2015 Chrysler 200C, which she had co-leased with Smith. Plaintiff did not inform defendant that Smith was a co-lessee of the Chrysler. Several days later, plaintiff was driving the Chrysler when her vehicle was struck by a vehicle driven by defendant, Patrick Lellos. Plaintiff sought first-party PIP benefits from defendant under her policy. After investigating the accident, defendant notified plaintiff that it was rescinding the insurance policy because plaintiff had failed to disclose that Smith was a co-owner of the Ford Escape and a co-lessee of the Chrysler, that Smith was a member of plaintiff's household, and that Smith's license had been suspended since 2016.

Plaintiff filed a complaint against defendant seeking first party PIP benefits under the policy.[1] Defendant counterclaimed against plaintiff, alleging fraudulent misrepresentation, innocent misrepresentation, and silent fraud by plaintiff in her application for insurance, and seeking rescission of the policy. Defendant asserted that plaintiff obtained the policy by fraudulently failing to disclose that Smith co-owned the Ford Escape, co-leased the Chrysler, was a member of plaintiff's household, and Smith's driver's license had been suspended, and that the misrepresentations were material because it would not have issued the policy if plaintiff had disclosed the information. Defendant contended that it was entitled to rescind the policy because of plaintiff's material misrepresentations.

Defendant thereafter moved for summary disposition under MCR 2.116(C)(10) contending that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. The trial court denied defendant's motion for summary disposition, finding that a genuine issue of material fact existed regarding whether plaintiff made a material misrepresentation in her application for insurance. The trial court found that plaintiff's failure to disclose that Smith was a co-lessee of the Chrysler was immaterial. The parties thereafter stipulated to entry of judgment in favor of plaintiff contingent upon the outcome of defendant's appeal to this Court.

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

---

[1] Plaintiff's complaint also named as defendants Lellos and Katherine Allcock, the owner of the vehicle driven by Lellos, and sought third-party and uninsured motorist benefits.

We also review de novo issues involving the interpretation of statutes and of contracts. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). The grant of equitable relief, however, such as rescission, is within the discretion of the trial court. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or if the trial court makes an error of law. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

## B. MATERIAL MISREPRESENTATION

Defendant contends that the trial court erred by denying its motion for summary disposition on the basis that there was a genuine issue of material fact regarding whether plaintiff made a material misrepresentation in the application for no-fault insurance. We agree.

An insurance policy is a contract between the insured and the insurer. *Farm Bureau Ins Co v TNT Equipment, Inc*, 328 Mich App 667, 672-673; 939 NW2d 738 (2019). When the parties dispute the terms of the contract, a court's task is to determine what the agreement is and give effect to the parties' intent. *Id.* In doing so, we consider the contract as a whole and give the policy language its plain and ordinary meaning; when policy language is clear, we are bound by the language of the policy. *Id.*

In Michigan, no-fault insurance policies are governed by the statutory provisions of the no-fault act, but also are subject to common-law contract defenses unless prohibited by statute. *Bazzi*, 502 Mich at 399-400. The no-fault act does not provide a fraud defense to PIP coverage, but an insurer may raise the common law defense of fraud in the procurement of a no-fault policy as a defense to a claim for coverage under the no-fault act. *Meemic Ins Co*, 506 Mich at 300, 303-304. In addition, the no-fault act does not preclude an insurer from rescinding a policy on the basis of fraud. *Bazzi*, 502 Mich at 401.

Because an insurer may avail itself of common-law contractual defenses that the no-fault act has not displaced, an insurer similarly may include those defenses in its contract. *Meemic Ins Co*, 506 Mich at 302 (an antifraud provision in a no-fault policy may be asserted as a valid contractual defense to providing mandatory coverage under the no-fault act based upon a common-law defense not abrogated by the no-fault act). In this case, the policy defendant issued to plaintiff included an antifraud provision that stated in part that "[w]e may void coverage under this policy if you or an insured have knowingly concealed or misrepresented any material fact or circumstances, or engaged in fraudulent conduct, at the time application was made for insurance or at any time during the policy period." If defendant's contract provision is properly derived from the no-fault act or is available as a common law defense not abrogated by the no-fault act, it is valid. See *id.* at 302-303. Here, defendant does not purport to raise a statutory defense under the no-fault act to avoid coverage, see MCL 500.3113, but instead asserts a common-law fraud defense included in its policy.

Michigan's contract law recognizes several interrelated common-law fraud doctrines based upon the valid common-law defense of fraud in the procurement of a policy, namely, fraudulent misrepresentation, silent fraud, and innocent misrepresentation, that may entitle a party to a legal or equitable remedy. *Titan*, 491 Mich at 555; see also *Meemic Ins Co*, 506 Mich at 304-305. To establish fraudulent misrepresentation, the party asserting the fraud must show that (1) the

-4-

defendant made a material representation, (2) it was false, (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation intending the plaintiff to act upon it, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff suffered damage as a result. *Id*. A misrepresentation is material if the insurer would not have issued the policy in the manner or at the rate at which it was issued if the insurer had known of the misrepresentation or the nondisclosed fact. See *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001). The statement of an insurer that it would not have issued the policy if it had known of the previously undisclosed information has been considered sufficient to establish materiality. See *Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).

Silent fraud, also known as fraudulent concealment, is established by demonstrating that (1) the defendant suppressed a material fact, (2) the defendant had the duty to disclose the fact, and (3) the plaintiff relied to his or her detriment. *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). Fraudulent concealment may occur if a person "remains silent when fair dealing requires him [or her] to speak." *US Fidelity & Guaranty Co v Black*, 412 Mich 99, 127; 313 NW2d 77 (1981). Innocent misrepresentation occurs when the claimant relies upon and is harmed by false representations regardless of whether the person making the statements acted in good faith. *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008).

In this case, defendant's counterclaim asserted fraudulent misrepresentation, silent fraud, and innocent misrepresentation by plaintiff. Defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that plaintiff made material misrepresentations in the application to obtain the policy, thereby entitling defendant to declare the policy void. The trial court found, however, that there was a genuine issue of material fact regarding whether plaintiff made a material misrepresentation. The trial court held:

> There is no evidence that Plaintiff misrepresented the drivers of the vehicle, and no evidence that any representation, or alleged misrepresentation made by Plaintiff was material. Notably, Plaintiff applied for insurance under the premise that she was the sole driver of the vehicles. There is no evidence to the contrary. Plaintiff was driving the insured vehicle at the time of the accident, and plaintiff sustained injury. The existence of a co-signer is immaterial to the instant matter. Moreover, there is no admissible documentary evidence supporting rescission. The August 14, 2018 letter sent to Plaintiff may be generally admissible as a business record under MRE 803(6), however, the statements contained in the document are inadmissible to show that the risk was unacceptable to defendant.

The trial court found that there was no evidence presented that plaintiff made a material misrepresentation in the procurement of the no-fault policy from defendant. The trial court reasoned that any misrepresentation made by plaintiff regarding Smith was not material because Smith was not driving the vehicle at the time of the accident and there was no evidence that Smith ever drove the Chrysler. The trial court further found that defendant did not submit admissible documentary evidence supporting its assertion that it would not have issued the policy had plaintiff disclosed that Smith was a co-owner of the vehicle.

We disagree with the trial court's analysis. The record is undisputed that plaintiff made misrepresentations in her application for no-fault insurance. In the application, plaintiff declared that no vehicle listed in the application was "not solely owned by and registered to the applicant (other than encumbrances, trusts or leases)." Contrary to that assertion, it is undisputed that the Ford Escape was co-owned by plaintiff and Smith. Plaintiff thus made a misrepresentation in her application to procure the policy from defendant. Further, plaintiff's deposition testimony establishes that she knew that the representation was false when she made it.

Shortly after obtaining the policy, plaintiff removed the Ford Escape from the policy and added the Chrysler to the policy; the Chrysler similarly was co-leased by both plaintiff and Smith, but plaintiff again did not disclose that information to defendant. Eligibility for the policy continued based upon the representations plaintiff made in her initial application, which contained misrepresentations regarding the Ford Escape, and the removal of the Ford Escape from the policy did not "cure" plaintiff's initial misrepresentation. See *21ˢᵗ Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016). Moreover, plaintiff added the Chrysler without informing defendant that she was not the sole lessee of the Chrysler, contrary to her assertions in the initial application, thereby again misrepresenting that she was the sole lessee of the vehicle identified in the policy. We conclude that reasonable minds could not disagree that plaintiff made misrepresentations in her application to procure insurance from defendant.

The trial court concluded, however, that plaintiff's misrepresentations regarding the ownership of the vehicles listed on the policy were not material, apparently reasoning that because Smith was not driving the Chrysler at the time of the accident plaintiff's misrepresentations were not causally connected to the loss. However, defendant was not required to demonstrate that plaintiff's misrepresentations were causally connected to the loss to demonstrate materiality.[2] A statement in an application for insurance is material when it affects the insurer's acceptance of the risk or the hazard assumed; if the insurer would not have issued the same policy or would have charged a different rate absent the misrepresentation, the misrepresentation was material. See *Oade*, 465 Mich 253-254. Regardless whether the loss is causally connected to the misrepresentation, if the insurer relied upon the misrepresentation in issuing the policy, the insurer has not accepted the risk of insuring the insured under the true facts. If the insurer establishes that it would not have issued the policy if it had known of the misrepresentation or the nondisclosed fact, the misrepresentation is material. See *id*. Here, regardless whether Smith ever drove the Chrysler and regardless that plaintiff was the driver at the time of the accident, if plaintiff made a

---

[2] Our Supreme Court has explained that a misrepresentation materially affects the hazard assumed by an insurer whenever the facts misrepresented are causally connected to the loss even when the insurer did not rely upon the misrepresentation. See *Smith v Globe Life Ins Co*, 460 Mich 446, 460-461; 597 NW2d 28 (1999), superseded by statute on other grounds as stated in *Dell v Citizens Ins Co of America*, 312 Mich App 734, 742; 880 NW2d 280 (2015). But materiality is not limited to that circumstance; an insurer's reliance upon the misrepresentation in issuing a policy is sufficient to establish materiality regardless of causal connection between the misrepresentation and the injury. See *Oade*, 465 Mich 253-254.

material misrepresentation in procuring the policy from defendant the policy was subject to rescission. See *Oade*, 465 Mich 253-254.

Generally, an insurer's assertion that it would not have issued the policy under its guidelines if it had known of the previously undisclosed information is sufficient to establish materiality. See *Lash*, 210 Mich App at 103-104. In this case, defendant submitted as an exhibit before the trial court the rescission letter it issued to plaintiff. The letter, authored by defendant's Master Underwriter, David Digman, indicates that if defendant had known, among other information misrepresented by plaintiff, that Smith was a co-owner of the Ford Escape and a co-lessee of the Chrysler, defendant would not have issued the policy.

The trial court, however, deemed the letter inadmissible to show that the risk was unacceptable to defendant. We disagree that the trial court could not consider the letter as evidence that defendant would not have issued the policy had it been aware of the misrepresentations. Although a motion for summary disposition under MCR 2.116(C)(10) must be supported by substantively admissible evidence, that evidence "does not have to be in admissible form." *Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 109 (2012). A party is not required to lay the foundation for the evidence submitted in support of its motion under MCR 2.116(C)(10) as long as there is a plausible basis for the admission of the evidence. *Airgas Specialty Products v Michigan Occupational Safety and Health Administration*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351105); slip op at 14. Applying those principles here, there is no basis to conclude that the substance of the letter, authored by defendant's Master Underwriter, David Digman, stating that defendant would not have issued the policy if the true conditions misrepresented by plaintiff had been known, was inadmissible. Mr. Digman could have testified at trial regarding the substance presented in the letter, and the evidence would have been admissible. See *Latits*, 298 Mich App at 114. The trial court therefore erred by failing to consider the letter as documentary evidence.

The record thus establishes that (1) plaintiff made material representations, (2) that were false, (3) according to her deposition testimony, plaintiff knew the representations were false when she made them, (4) she intended that defendant act upon her representations by issuing the policy, (5) defendant acted in reliance upon plaintiff's representations by issuing the policy, and (6) defendant suffered damage as a result. Defendant thus established the elements of fraudulent misrepresentation, including the element of materiality. We observe that "it is impossible to hold an insurance company liable for a risk it did not assume." *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014) (quotation marks, citation, and brackets omitted). The trial court therefore erred by denying defendant's motion for summary disposition.

We also disagree with the trial court's conclusion that defendant is not entitled to rescind the policy. Again, an antifraud provision included in a no-fault insurance policy is valid when based on a common-law defense not abrogated by the act. *Meemic Ins Co*, 506 Mich at 293. When the fraud relates to procurement of the policy, rescission is an appropriate remedy. *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 510, 513; 967 NW2d 841 (2021). Here, defendant's claim that it is entitled to rescind the policy is pursuant to an antifraud provision of its policy based upon a valid common-law defense not abrogated by the no-fault act. Defendant established before the trial court that plaintiff made material misrepresentations to procure the

policy from defendant. The terms of the policy, consistent with the common law, support defendant's efforts to rescind the policy in this case.[3]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood

---

[3] Because plaintiff participated in the fraudulent procurement of the policy, rescission is appropriate without a balancing-of-the-equities analysis. See *Webb*, 335 Mich App at 510-512.